## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ORA GUY,** | ) |
| | ) |
| **NICOLE JOHNSON,** | ) |
| | ) |
| **CHARLES A. GUY, JR.,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **MINOR M.G.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) Case No.: |
| | ) |
| **UNIFIED GOVERNMENT OF** | ) |
| **WYANDOTTE COUNTY AND** | ) |
| **KANSAS CITY, KANSAS,** | ) |
| | ) |
| **THOMPSON SHEPHERD,** | ) |
| (in his official and individual capacity) | ) |
| | ) |
| **JEFF YOUNG,** | ) |
| (in his official and individual capacity) | ) |
| | ) |
| **Sgt. Doe,** | ) |
| (in his official and individual capacity) | ) |
| | ) |
| **KARL OAKMAN, CHIEF OF POLICE** | ) |
| (in his official and individual capacity) | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

COME NOW, Plaintiffs Ora Guy, Nicole Johnson, Charles A. Guy, Jr. and Minor M.G., by and through their attorneys Spencer J. Webster of Webster Law, LLC, and for their causes of actions against Defendants, state and allege as follows:

## PARTIES

1.      Plaintiff's Ora Guy, Nicole Johnson, Charles A. Guy, Jr. ("C.J.") and Minor M.G. are all individuals and residents of Kansas City, Kansas.

2.      Defendants are resident of the City of Kansas City in the State of Kansas.

3.      Defendant Unified Government of Wyandotte County and Kansas City, Kansas ("Defendant Unified Government" or "Unified Government") was created by and established under the law of the State of Kansas; is the governing body with the responsibility and duty of overseeing the Kansas City, Kansas Police Department and its officers.

4.      Defendant Unified Government is liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts, errors and/or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with the Unified Government.

5.      Defendant Unified Government can be sued in its own name, and can be served at 701 N. 7th Street, Kansas City, Kansas 66101.  The City of Kansas City, Kansas, which includes the Kansas City, Kansas Police Department (sometimes referred to as, "Defendant KCKPD"), is a subdivision of the Unified Government and is located within Wyandotte County.

6.      At all relevant times, Defendants Shepard, Young, XXXX, and Oakman were duly sworn police officers within the Kansas City, Kansas Police Department, acting within the course and scope of their employment with the Unified Government of Wyandotte County and Kansas City, Kansas, and acting in concert regarding the conduct described below.

7.       At all relevant times in this Complaint, Defendants were acting under color of law.

8.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to redress the violation of Plaintiff's rights afforded her by the United States Government.

9.     The conduct alleged in this Complaint violated clearly established federal and state protected rights of which every reasonably competent and prudent official in Defendants' respective positions would have, or should have, been aware. As to Defendants' actions, error and omissions toward Plaintiffs, there was no objectively reasonable reliance on existing law.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. Defendants' acts, omissions, and wrongful conduct violates civil rights protected by the federal constitution and are actionable herein pursuant to 42 U.S.C. § 1983.

11.     Venue is proper under 28 U.S.C. § 1391(b) because all parties reside in this judicial district and the events giving rise to the claims asserted herein occurred with the district.

## FACTS

12.     On January 3, 2023, Charles Guy Sr. arrived at Plaintiffs' home, uninvited, claiming he had a right to custody of Minor M.G.

13.     At the time of Guy Sr.'s arrival, Plaintiffs were not present at their home and Guy Sr. was aware of this.

14.     Upon arrival to Plaintiffs' home, Guy Sr. unlawfully entered Plaintiffs' home without Plaintiffs being present in the home.

15.     Defendant Guy Sr. communicated with Plaintiffs claiming if he did not get custody of Minor M.G. he was going to call the police.

16.     Defendant Guy Sr. did in fact call the Kansas City, Kansas Police Department ("KCKPD") who promptly showed up to Plaintiffs' home.

17.     KCKPD officers, Defendants Thompson Shepherd and Jeff Young, responded to the call at Plaintiffs' home.

18.     Before Plaintiffs arrived home, Defendants Shepherd and Young entered Plaintiffs' home without a search warrant and without Plaintiffs' consent.

19.     Upon arriving home, Plaintiff were met by Defendants Shepherd and Young; Defendants claimed that Plaintiffs needed to relinquish physical custody of Minor M.G. to Guy, Sr.

20.     Upon information and belief, Guy Sr. had no court ordered custody agreement giving Guy, Sr. a right to custody of Plaintiffs CJ's and Johnson's child.

21.     Guy, Sr. possessed some type of paperwork Defendants Young and Shepherd relied on in demanding Plaintiffs hand over the child to Guy, Sr., but Plaintiffs were denied the ability to see such documents.

22.     During the interaction, Defendant Shepherd was extremely hostile, threatening, demanding, and rude.

23.     Further, Defendant Shepherd appeared to be under the influence of some type of substance as he had to lean on the wall for support, was speaking so fast that Plaintiffs could hardly understand him, his face was flush, he was blinking his eyes at an unusual frequency, was slurring his words, and just generally acting strange.

24.     Plaintiffs pointed out to Defendant Young that Defendant Shepherd appeared to be under the influence of some type of substance, but Defendant Young failed to even acknowledge that Defendant Shepherd was acting unusual or otherwise secure the situation for the safety of all.

25.     Plaintiffs, fearing for their safety, as an officer with a deadly weapon seemed to be under the influence of some type of substance, requested that a sergeant be sent to the scene.

26.     Shortly, a sergeant arrived on the scene, but just like Defendant Young, failed to address the fact that Defendant Shepherd appeared to under the influence of type of substance.

27.     Notwithstanding, Defendant KCKPD took Minor M.G. from Plaintiffs and required Minor M.G. to leave Plaintiffs' home with Guy, Sr.

28.     Plaintiffs were never allowed to examine the documents Guy, Sr. claimed gave him the authority to take physical custody of Minor M.G. from Minor M.G.'s biological parents, Plaintiffs C.J. and Johnson.

29.     Other than Guy, Sr.'s documents, Defendants did not explain or offer any reason why Guy, Sr. was allowed to take custody of Minor M.G.

30.     Upon information and belief, Defendant Shepherd was allowed to leave the scene driving in his own squad car when he was clearly under the influence.

31.     After the incident, no report was made regarding the incident nor Defendant Shepherd's condition as Defendant Unified Government claims it learned of the incident after seeing the video of the interaction on social media.

### FACTS: UNIFIED GOVERNMENT'S AND CHIEF OAKMAN'S FAILURES

32.     Defendants Unified Government and Oakman did not require Defendant Shepherd to take a drug test after the incident to confirm whether he was under the influence of any illegal drugs while on duty as an officer for KCKPD.

33.     Defendants Unified Government and Oakman defended Defendant Shepherd's actions claiming, "preliminary information indicates that a medical condition may have been a factor in the officer's appearance."

34.     Interestingly, during the interaction, none of the Defendants questioned Defendant Shepherd as to his health and well-being, nor as to whether he had taken any type of substance that would alter his behavior or appearance.

35.     Further, upon information and belief, neither Defendant Young nor Sergeant Doe were put on leave or otherwise disciplined for not making a report regarding Defendant Shepherd's conditions, whether medical or otherwise.

36.     At all times material herein, Defendants Unified Government's and Oakman's practice, so well settled as to constitute custom or usage with force of law, was to approve, ratify and defend the unsafe and unconstitutional actions of the officer involved regardless of whether circumstances raised questions about whether Defendants entry into Plaintiffs' home was constitutional, whether there was any legal basis to remove Minor M.G. from his parents' care, or whether Defendant Shepherd had been under the influence of illegal drugs while on duty and during the interactions with Plaintiffs by: (1) failing to discipline, criticize or seek to change such conduct; (2) consistently and systematically failing to genuinely question or investigate the propriety of such conduct; and (3) consistently and systematically working to hide and protect from public disclosure the identity and role of officers involved in such conduct.

37.     Defendants Unified Government and Oakman's training and supervision deficiencies contributed to the pattern and practice of lack of reporting officer misconduct and unconstitutional conduct, such as warrantless entries and the right of parents to direct the care and upbringing of their children.

38.     Defendants Unified Government, Oakman and KCKPD effectively discouraged reporting of officer misconduct, constitutional violations and threats to community safety.

39.     Defendants Unified Government's, Oakman's, and KCKPD's policies and training in effect at the time of Plaintiffs' receipt of unconstitutional searches, interference with family, and threat of danger demonstrate deliberate indifference to the right of the inhabitants of Kansas City, Kansas.

40.     These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of Defendant Unified Government and Defendant Oakman, as described in this Complaint, were the cause, were the contributing cause and/or were the moving force behind the constitutional and other violations described in this Complaint. These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs are established, at least in part, by proof of knowledge of, acquiescence in, or ratification of all of the wrongful conduct explained in this Complaint.

41.     Defendants Unified Government and Oakman failed to adopt policies or train its officers in order to avoid the use of customary practices of unlawful entry and interference with family Defendants used as described herein. This failure to act was the result of deliberate indifference to the rights of the inhabitants of Kansas City, Kansas.

42.     Defendants Unified Government's and Oakman's inadequate and internal accountability measures, such not disciplining officers for their lack of reporting events amounting to constitutional violations or officer misconduct, or lack of accurately reporting events from a call, contributed to the pattern and practice of unconstitutional violations by Kansas City, Kansas Police Department officers.

43.     Among other policies, practices, patterns and/or customs, Defendant Unified Government, through its Chief of Police, Defendant Oakman, adopted a policy, practice and/or custom at the time of the constitutional violations and officer misconduct that allowed officers to violate citizens' constitutional rights and put them in reasonable apprehension of safety, which includes the conduct by Defendants Young and Shepherd as set forth herein, without retraining or punishing or the fear of retraining or punishment.

44.     Defendants Unified Government, through Defendant Oakman, does not require supervising officers to seriously and objectively report instances of officer misconduct and/or constitutional violations, such as those mentioned herein, and encourages such conduct, even when the officers conduct is videotaped, such as here.

45.     Defendants Unified Government and Oakman failed to provide its officers, including Defendants Young, Shepherd, and Sergeant, with the operational guidance needed to limit unlawful entries and interference with family within the bounds of the Constitution of the United States of America and that failure was a moving force behind the injuries and harm sustained by Plaintiffs.

46.     Long before Plaintiffs were injured and harmed, Defendants Unified Government and Oakman knew or should have known that its practices and procedures would result in injuries and harm to citizens.

47.     Defendants Unified Government and Oakman had actual or constructive notice that its action or failure to act was substantially certain to result in constitutional violations and Unified Government and Oakman consciously and/or deliberately chose to disregard the risk of harm, as evidenced by the tortious and unconstitutional conduct.

48.     Information related to the injuries and harm sustained by Plaintiffs was difficult to obtain due to Defendants Unified Government and Oakman's policy of creating a veil of secrecy surrounding the events set forth herein.

### COUNT I
### Violation of 42 U.S.C. § 1983—Deliberate Indifference in Policies, Practices, Customs, Training, and Supervision in Violation of the Fourteenth Amendment
### *Monell*

49.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

50.     Plaintiffs were and are citizens of the United States and thus entitled to the full benefits and equal protection of the federal constitution and all laws and regulations enacted thereunder.

51.     Defendant Unified Government of Wyandotte County and Kansas City, Kansas is a person as recognized under 42 U.S.C. § 1983.

52.     Defendants at all times relevant to this action were acting under color of state law.

53.     Defendant Unified Government of Wyandotte County and Kansas City, Kansas and Defendant Karl Oakman, agents, and representatives were—each of the Defendants herein—at all times relevant, acting under the color of state statute, ordinances, regulations, customs, or usage in their deprivation of decedent's rights, privileges and immunities guaranteed to him by the Constitution of the United States, including the Amendments thereto, and of the laws of the State of Kansas.

54.     At the time of the incident mentioned in this Complaint, Plaintiffs had clearly established Constitutional rights, including due process under the Fourteenth Amendment to the United States Constitution.

55.     Defendants and Unified Government and its employees, agents, and representatives knew, or should have known, of these rights at the time of the complaint of conduct.

56.     The acts or omissions of Defendants and Unified Government and its employees, agents, and representatives, as described herein, deprived Plaintiff of his constitutional and statutory rights, ultimately resulting in the deprivation of Plaintiffs' due process rights, including removing the minor from the custody of Plaintiffs.

57.     Defendants and Unified Government and its employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiffs of their clearly established rights,

privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

58.     Defendants and Unified Government and its employees, agents, and representatives are policymakers for the Kansas City, Kansas Police Department, and in that capacity, established policies, procedures, customs and/or practices for the department.

59.     Defendants and Unified Government and its employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, including Plaintiffs, which were the moving forces behind and proximately caused the violations of Plaintiffs' constitutional rights as set forth herein.

60.     Defendants and Unified Government and its employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, practices, and/or failed to properly train and/or supervise its employees, agents and representatives in a manner amounting to deliberate indifference to the constitutional rights of Plaintiffs and the public. The inadequacy of training and/or supervision is so likely to result in violation of constitutional and federal rights, such as those described herein, that the acts and omissions are indifferent to those rights.

61.     Upon information and belief, there is a decades-long pattern of unconstitutional acts by Defendants employees of using excessive force, making unlawful seizures, conducting unlawful searches, making unlawful arrests, and generally depriving citizens of civil rights.

62.     Defendant Unified Government, Defendant Oakman and other Defendants, at all times pertinent to this Complaint, were aware of this pattern.

63.     The deliberately indifferent training and supervision provided by Defendants and Unified Government and its employees, agents, and representatives resulted from a conscious and

deliberate choice to follow a course of action resulting in Plaintiffs' constitutional and statutory rights being violated ultimately resulting in injury.

64.     As a direct and proximate result of Defendants and Unified Government's interference with Plaintiffs' federal constitutional and statutory rights and failure to provide supervision and training, Plaintiffs have suffered significant harms, damages and losses.

65.     Defendants and Unified Government have shown deliberate indifference to or tacit authorization of the above conduct after notice to the officials of such misconduct.

66.     Plaintiffs' harms and damages were caused and/or directly contributed to be caused by Defendants and Pettis County's unconstitutional practice and customs.

67.     As a result of the unconstitutional policies and customs of Defendants, Plaintiffs were placed in fear of their well-being and safety, were deprived of custody of the minor child, were subject to an unlawful search and seizure, all causing injuries to Plaintiffs.

68.     The actions of Defendants and resulting harm to Plaintiffs were attributable to something more than simple negligence upon the part of Defendants.

69.     Defendants' conduct as alleged herein constitutes a pattern and practice that is based on policies and protocols knowingly designed to afford the least amount of accountability toward law enforcement officers, regardless of the harm to the community or the catastrophic consequences said policies and protocols may cause.

70.     These actions violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

71.     As a direct and proximate result of these violations of Plaintiffs' constitutional rights, Plaintiffs were injured.

72.     Punitive damages are available against Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

73.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

74.     Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiffs and other similarly situated, entitling Plaintiffs to exemplary damages in amounts to be proven at trial.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, for economic damages including, but not limited to; actual, emotional, and compensatory damages, for punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre-and-post-judgment interest as allowed by law and for any further and other relief as the Court deems just and proper.

## COUNT II
### Violation of 42 U.S.C. § 1983—Supervisory and Municipal Liability
### *Canton*

75.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

76.     Defendants failed to properly train or modify its training of Defendant Shephard and Defendant Young and its other officers, including but limited to, matters related legal searches; legal seizure; probable cause; reasonable suspicion; excessive force; affording citizens due process rights; intervention in the unlawful and/or illegal conduct of other officers; racial profiling, retaliation and harassment; interacting with citizens.

77.     Engaging in searches, seizures, using force to effectuate and arrest/seizure/search, intervening in the unlawful and/or illegal conduct of fellow officers, and racial profiling are using and recurring situations with which Defendant and Defendants' law enforcement officers and other agents encounter on a regular basis.

78.     As such, Defendants were aware of the need for specific training to address and eliminate illegal conduct by their officers.

79.     Defendants were also aware of the need for training due to prior constitutional violations by their officers.

80.     Defendants were aware that deprivation of the constitutional rights of citizens was likely to result from lack of training and the failure to modify training.

81.     As such, Defendant were deliberately indifferent an exhibited reckless disregard with respect to the potential violation of constitutional rights.

82.     The failure to train and/or to appropriately modify training constituted official policies, practices, or customs of Defendants.

83.     Defendants' failure to train and/or to modify training was behind the acts and omissions the Defendants made toward Plaintiffs.

84.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs suffered harm and were deprived of their constitutional rights.

85.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered actual, emotional, compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

86.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

87.     In each instance, Defendants acted under color of state law.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, for economic damages including, but not limited to; actual, emotional, and compensatory damages, for punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre-and-post-judgment interest as allowed by law and for any further and other relief as the Court deems just and proper.

### COUNT III
### Violation of 42 U.S.C. § 1983—Unlawful Search

88.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

89.     Defendants "searched" Plaintiffs' residence by unlawfully entering the premises when Plaintiffs were not home.

90.     Defendants did not have a warrant to enter and search the residence nor did Plaintiffs consent to Defendants entering and searching the residence.

91.     Defendants did not have a reasonable suspicion that Plaintiffs had committed, were committing, or were about to commit a crime; Defendants were called out to the residence for a civil matter.

92.     Any interest the Defendants may have had in carrying out the above-described acts to fulfill their "community caretaking function" was far outweighed by Plaintiffs' interest in being subjected to the government intrusion imposed on them by the unlawful search.

93.     The search by Defendants of Plaintiffs' residence in the above-described acts was objectively unreasonable and violated clearly established law.

14

94.     During the actions described herein, each of the Defendants had a duty to intervene on behalf of Plaintiffs, who were citizens whose constitutional rights were being violated in their presence by another officer.

95.     Upon information and belief, Defendants all recognized that an illegal and unconstitutional search was being conducted.

96.     The Defendants each observed and were in a position to intervene to stop the illegal and unconstitutional search of Plaintiffs' property.

97.     In all of the actions stated herein, the Defendants were acting under color of law.

98.     These actions violated Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

99.     As a direct and proximate result of these violations of Plaintiffs' constitutional rights, Plaintiffs were injured.

100.    Punitive damages are available against Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

101.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

102.    Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiffs and other similarly situated, entitling Plaintiffs to exemplary damages in amounts to be proven at trial.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, for economic damages including, but not limited to; actual, emotional, and compensatory damages, for punitive damages, for reasonable attorneys' fees and

15

costs incurred herein, for pre-and-post-judgment interest as allowed by law and for any further and other relief as the Court deems just and proper.

## COUNT IV
### Violation of 42 U.S.C. § 1983—Failure to Intervene

103.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

104.    By their conduct and under color of state law the Defendants, acting under color of state law, had opportunities to intervene on behalf of Plaintiffs to prevent the unlawful seizure, unlawful search, retaliation and harassment, assault and battery Plaintiffs endured, but with deliberate indifference, declined to do so.

105.    The Defendants' failure to intervene violated Plaintiffs' clearly established constitutional rights as described herein.

106.    No reasonable police officer at the times relevant to this Complaint would have believed that failing to intervene to prevent the constitutional violations conducted by their fellow officers as discussed herein, were lawful.

107.    As a direct and proximate result of Defendants acts and omissions, Plaintiffs suffered harm and were deprived of their constitutional rights.

108.    As a direct and proximate result of the acts and omissions described herein, Plaintiffs suffered actual, emotional, compensatory and special damages as defined under federal common law and in an amount to be determined by a jury.

109.    Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, for economic damages including, but not limited to; actual,

emotional, and compensatory damages, for punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre-and-post-judgment interest as allowed by law and for any further and other relief as the Court deems just and proper.

**COUNT V**
**Common Law Assault and Battery**
**(Defendant Shepherd)**

110.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

111.    During the interaction with Plaintiffs, Defendant Shepherd was intentionally acting in a threatening manner toward Plaintiffs.

112.    Defendant Shepherd, upon information and belief, was under the influence of some drug or substance, and had at his use and disposal, his department issued firearm.

113.    Based on Shepherd's threatening manner, his erratic and unpredictable behavior, and his readily available firearm, Plaintiffs were in immediate apprehension of bodily harm.

114.    Defendant Shepherd also touched Plaintiffs, including grabbing the minor child, which, in his condition or state, was unprivileged.

115.    Defendant Shephard's unprivileged touching, and/or attempted touching, was intentional and such contact and/or attempted contact, was harmful or offensive to Plaintiffs.

116.    As a direct and proximate result of Defendant Shephard's actions, Plaintiffs' suffered harm.

117.    As a direct and proximate result of the acts and omissions described herein, Plaintiffs suffered actual, emotional, compensatory and special damages in an amount to be determined by a jury.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and against Defendants, jointly and severally, for economic damages including, but not limited to; actual, emotional, and compensatory damages, for punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre-and-post-judgment interest as allowed by law and for any further and other relief as the Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiffs request a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

**WEBSTER LAW, LLC**

/s/ Spencer J. Webster
Spencer J. Webster,    MO # 78795
swebster@sjwebsterlaw.com
712 Broadway Blvd., Suite 100
Kansas City, Missouri 64105
(816) 384-2272

**ATTORNEY FOR PLAINTIFF**